IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL NO:**   23- _____ |
| **v.** | : | **DATE FILED:**   _____ |
| MARTIN RAMOS | : | **VIOLATION:** |
| | | **18 U.S.C. § 1001(a)(3) (false statement** |
| | : | **- 1 count)** |
| | | **18 U.S. C. § 2 (aiding and abetting)** |

**INFORMATION**

**COUNT ONE**

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

1.       Congress enacted the Atomic Energy Act (AEA), and the United States

Nuclear Regulatory Commission (NRC) issued regulations to, among other things, "protect the

health and safety of the public." 42 U.S.C. § 2012. Under the AEA, regulations have been

promulgated to ensure the safe and efficient use of atomic energy. These regulations included

rules and controls regarding inspection and testing of components in nuclear power plants to

ensure the accuracy and reliability of the inspection and testing. The NRC issued operating

licenses to ensure the safe and effective operations at nuclear power plants. Recipients of such

licenses were known as licensees. Licensees frequently contracted with suppliers and vendors to

provide services, including inspection and testing of equipment and components, at their nuclear

power plants.

2.       NRC regulations required that any information provided to the NRC by an

NRC licensee or an applicant seeking an NRC license, and any information required by statute or

regulation to be maintained by the licensee or applicant, must be "complete and accurate in all material respects." 10 C.F.R. § 50.9(a).

3.     Pursuant to 10 C.F.R. § 50.5, promulgated under the AEA, any contractor (including a supplier or consultant), subcontractor, employee of a contractor or subcontractor of any licensee or applicant for a license, may not:

> (1) Engage in deliberate misconduct that causes or would have caused, if not detected, a licensee or applicant to be in violation of any rule, regulation, or order; or any term, condition, or limitation of any license issued by the [NRC]; or (2) Deliberately submit to the NRC, a licensee, an applicant, or a licensee's or applicant's contractor or subcontractor, information that the person submitting the information knows to be incomplete or inaccurate in some respect material to the NRC.

10 C.F.R. § 50.5 (a)(1) and (2). The willful or attempted violation of these regulations are punishable as a crime pursuant to 42 U.S.C. § 2273(a).

<u>Acoustics Emissions Testing Equipment</u>

4.     Acoustic Emission (AE) testing was a form of non-destructive testing (NDT) used to inspect and evaluate materials, components, or assemblies without destroying their serviceability. AE testing equipment was used in nuclear power plants to determine, among other things, the structural integrity of heavy-lifting components, such as cranes and rigging, that handled critical components of a nuclear reactor, including nuclear fuel.

5.     AE testing worked by mounting small sensors onto a component undergoing a test. The component emitted stress waves when the component was submitted to an external stimulus, such as high pressures, loads or temperatures. The sensors detected the stress waves emitted by the component, converted them into electrical signals, which were relayed to a computer for processing. The process assessed the structural integrity of

components, including whether there was any infirmity, weakness, or damage within the component.

6.      The AE equipment used to conduct tests at nuclear power plants was required by the NRC to be accurately calibrated prior to use. Accurate calibration of AE testing equipment was performed to ensure that the testing performed on heavy-lifting components by the AE equipment was accurate and reliable to ensure the components were safe to perform their functions. 10 C.F.R. § 50, Appendix B, Subpart XII.

Calibration of AE Testing Equipment by Company A

7.      Company A, known to the government, was a contractor that performed AE testing at nuclear power plants licensed by the NRC. Company A was a Delaware corporation that operated a facility in Trainor, Pennsylvania. The personnel and equipment used for AE testing at nuclear power plants was located at Company A's Trainor facility.

8.      Company A's headquarters were in Princeton Junction, New Jersey. Calibration of Company A's AE testing equipment took place at the Princeton Junction facility.

9.      When AE testing equipment was calibrated at the Princeton Junction facility, a calibration certificate was issued certifying that the testing equipment had been accurately calibrated in accordance with industry standards, which was also an NRC requirement. The Princeton Junction facility's AE equipment calibration certificates were valid for 12 months from the date of calibration pursuant to policies developed in accordance with 10 C.F.R. § 50, Appendix B, Subpart XII.

10.      Following AE testing, Company A was required to provide to the licensee a report that included a calibration certificate for the AE equipment used during testing at the

nuclear power plant.   The calibration certificate was a record required to be maintained by the licensee for inspection by the NRC. 10 C.F.R. § 50, Appendix B, Subpart XVII.

11.     Defendant MARTIN RAMOS was an employee of Company A. Defendant RAMOS was employed as a Lead AE Engineer for Company A's Services Division at the Trainor facility. When deployed as a Lead Engineer, defendant RAMOS was responsible for supervising AE testing for licensees in the field, and for the creation of the final AE testing reports associated with the relevant nuclear plants. The final testing reports, which included a copy of the AE testing equipment calibration certificates, were approved and sent to licensees by defendant RAMOS' supervisor at Company A.

12.     From on or about October 1, 2010, through on or about May 5, 2021, defendant MARTIN RAMOS created false calibration certificates for AE testing equipment. In total, 15 false calibration certificates were sent to licensees as part of final AE testing reports on 29 occasions. The false calibration certificates were created in lieu of sending the AE equipment for annual calibration in Princeton Junction.

13.     On or about April 24, 2020, in the Eastern District of Pennsylvania, the District of New Jersey, and elsewhere, defendant MARTIN RAMOS willfully and knowingly made and used, and aided and abetted the making and use of, a false writing and document, that was a falsified AE equipment calibration certificate, knowing the same to contain a

materially false, fictitious, and fraudulent statement, in a matter within the jurisdiction of the

United States Nuclear Regulatory Commission, an agency of the executive branch of the

Government of the United States.

   In violation of Title 18, U.S. Code, Sections 1001(a)(3), and Title 18, United

States Code, Section 2.


                 **JACQUELINE C. ROMERO**
                 **UNITED STATES ATTORNEY**

No. _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

MARTIN RAMOS

INFORMATION

18 U.S.C. § 1001(a)(3) (false statement - 1 count)
18 U.S. C. § 2 (aiding and abetting)

A true bill.

_____
Foreman

Filed in open court this _____ day,
Of _____ A.D. 20 _____

_____
Foreman

Bail, $ _____